UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABIGAIL DOOLITTLE,

                      Plaintiff,

-against-

BLOOMBERG L.P., et al.,

                      Defendants.

Case No. 22-cv-09136 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

      Abigail Doolittle ("Doolittle" or "Plaintiff") brings this action against her current employer, Bloomberg L.P. ("Bloomberg"), and her colleague Mark Crumpton ("Crumpton" and, together, "Defendants"), alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"). On July 31, 2023, Plaintiff submitted a motion for leave to file a First Amended Complaint, seeking to add factual allegations to the present claims and assert new age-discrimination claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"), the NYSHRL, and the NYCHRL. For the following reasons, Plaintiff's motion is GRANTED in part and DENIED in part.

# BACKGROUND[1]

## I. Factual Background

Since 2015, Doolittle has worked as an on-air correspondent for Bloomberg Television, a division of Bloomberg. *See* PAC ¶¶ 21, 87. In December 2018, Plaintiff's colleague Crumpton, also a Bloomberg Television employee, started making inappropriate comments to Doolittle. *Id.* ¶ 29. More than once, Crumpton suggested that Plaintiff go on vacation with him. *Id.* ¶ 30. He repeatedly commented on her clothing and appearance, *id.* ¶ 31, and once told Plaintiff an unwelcome sexual joke, *id.* ¶ 32. Crumpton also indicated in Doolittle's presence, through suggestive grunting, his strong sexual attraction to another female Bloomberg employee. *Id.* ¶ 34.

On or about December 1, 2020, while Plaintiff was conducting an on-air interview in the newsroom, she saw Crumpton, seated six feet away from her on set, staring at her while appearing to masturbate his genitals over his pants. *Id.* ¶ 37. Doolittle complained the next morning to one of her supervisors, telling him that she would "never sit on a set with Crumpton again" and that she "did not want Crumpton present on or near any set during her broadcasts." *Id.* ¶ 39. The supervisor assured Doolittle that he would address her concerns. *Id.* The following day,[2] Crumpton sat in the same seat across from Doolittle while she conducted a live television interview. *Id.* ¶ 40. Doolittle complained again to the supervisor, who replied that an executive producer had "spoke[n] with [Crumpton]" and that "[w]e should be all set." *Id.* ¶ 41

---

[1] The following facts are taken from the Proposed Amended Complaint. *See* ECF No. 43-1 (the "PAC"). The Court will recite only those facts necessary to resolve the instant motion. The Court assumes these allegations to be true for the purpose of deciding Plaintiff's motion and construes them in the light most favorable to Plaintiff. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

[2] The PAC erroneously lists this date as December 3, 2022. PAC ¶ 40.

(second alteration in original). Upon learning of Plaintiff's complaints about him, Crumpton took actions intended to retaliate against Plaintiff for her complaint and intimidate her from making additional complaints. *Id.* ¶ 43; *see id.* ¶¶ 42 (alleging that Crumpton "aggressively charge[d] the set" while Plaintiff was about to go on air), 50 (alleging instances where Crumpton stared intimidatingly at Plaintiff and feigned overly friendly greetings), 52 (alleging that Crumpton found excuses to appear in Plaintiff's vicinity).

"Simultaneous to the 'masturbation incident' and its aftermath," Bloomberg's then-Head of Global Television and Radio pressured Doolittle to reduce her airtime and instead to "Squawk" to Bloomberg's financial clients via the Bloomberg Terminal. *Id.* ¶ 57. This move would have meant that "a significantly younger female employee would . . . replace [Doolittle's] television role," but Doolittle "politely declined the offer on a few occasions." *Id.* Around December 6, 2020 – the week after the masturbation incident – another senior manager told Doolittle "forcefully" in a meeting that "she was not a team player" and that "she should really rethink her decision" not to reduce her airtime. *Id.* ¶ 58. At this time, Plaintiff was 47 years old and, "to her knowledge the oldest female television talent on Bloomberg's dayside television." *Id.* ¶ 60. Upon Doolittle's information and belief, "the one veteran female television presenter at Bloomberg who was older than Plaintiff was abruptly dismissed and replaced by someone at least fifteen years her junior," *id.* ¶ 8, "after being assigned to other, non-Bloomberg Television duties just a few months earlier," *id.* ¶ 60.

In June and July 2021, Doolittle met with representatives from Human Resources ("HR"), to whom she reported the "masturbation incident" and the rest of Crumpton's behavior that she found "sexually harassing and retaliatory." *Id.* ¶ 53; *see id.* ¶¶ 54-56. Immediately after the last of these meetings, "Bloomberg drastically reduced Plaintiff's airtime from five to eight

news segments per day, to four (or fewer) news segments per day." *Id.* ¶ 62. In October 2021, Bloomberg cancelled the "Smart Charts" segment that "had been under Plaintiff's purview" and told her to stop sending the "Morning Note" that she regularly sent each day to nearly 300 Bloomberg employees. *Id.* ¶ 73. Between November 2021 and January 2022, Doolittle also noticed a "cycling pattern" with her on-air time; some weeks, she was on air "just one to three times a day" while, "a few weeks later, it would increase to more than five hits." *Id.* ¶ 75.

Meanwhile, Crumpton continued to harass and intimidate Doolittle. *Id.* ¶ 72. On March 28, 2022, Doolittle complained again to HR about Crumpton. *Id.* ¶ 77. HR declined to investigate Crumpton, stating that he was "just doing his job." *Id.* ¶ 78. Over the next eleven months, Crumpton "inserted himself into Plaintiff's space on more than eighty occasions," such as by "standing near Plaintiff's desk, . . . passing by the cameras while Plaintiff was on air, waiting for Plaintiff in the studio before she went on air, [and] standing on set and staring her down while she was on air." *Id.* ¶ 79. Meanwhile, Plaintiff received "fewer and/or very uneven on-air segments than she had prior to her complaints." *Id.* ¶ 81. Finally, Doolittle alleges that, in early 2023, she was assigned to cover real estate for Bloomberg Television, but, after identifying "high-quality real estate investors to interview," she was "told that she needed to start the process in the print side of the company." *Id.* ¶ 88.

To date, Plaintiff continues to work at Bloomberg. *Id.* ¶ 87. She alleges, however, that "her chances of advancement appear to be slim," *id.*, and that she has "hit a dead end" at Bloomberg due to harassment, discrimination, and retaliation, *id.* ¶ 89.

## II. Procedural History

On October 1, 2021, Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), alleging sex/gender discrimination, sexual harassment, and retaliation. *See generally* ECF No. 48-2 ("Original Charge"). On July 28, 2022, the EEOC

4

issued Plaintiff a Notice of Right to Sue.  *See generally* ECF No. 1-1 ("Right to Sue").

On October 25, 2022, Plaintiff filed her original Complaint against Defendants, claiming sex discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL.  *See generally* ECF No. 1.  On December 12, 2022, Defendants answered the Complaint.  *See* ECF Nos. 15-16.  The parties were referred to mediation, which proved unsuccessful in February 2023.  *See* ECF Nos. 17, 20.

On July 31, 2023, Doolittle filed the instant motion to amend her Complaint.  *See* ECF Nos. 42 ("Br."), 47 ("Reply").  As the parties were briefing this motion, Plaintiff filed another charge with the EEOC on August 10, 2023, alleging age discrimination and retaliation.  *See generally* ECF No. 48-1 ("New Charge").  The PAC now before the Court for consideration alleges additional age-discrimination violations under the ADEA, NYSHRL, and NYCHRL.  PAC ¶¶ 103-134.  It also adds new allegations supplementing Doolittle's existing claims of sexual harassment and retaliation.  *See generally* ECF No. 43-2 (redlining changes between original complaint and PAC).  Defendants oppose the motion.  *See* ECF Nos. 45 ("Bloomberg Opp."), 46 ("Crumpton Opp.").  The motion is now fully briefed and presently before the Court.

**III.  Applicable Legal Standard**

"Once a responsive pleading has been filed, [the] plaintiff may amend the complaint only with leave of court."  *Cerni v. J.P. Morgan Secs. LLC*, 208 F. Supp. 3d 533, 543 (S.D.N.Y. 2016) (citation omitted).  Under Federal Rule of Civil Procedure ("Rule") 15(a)(2), leave to amend a complaint shall be "freely" given "when justice so requires."  However, "it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Motions for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-

moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009)). The court draws all reasonable inferences in the plaintiff's favor, and accepts as true all non-conclusory allegations of fact. *Id.* (citation omitted). However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Defendants argue that Plaintiff's proposed amendments are futile because (1) the ADEA claim is time barred, fails to allege that she suffered an adverse employment action, and fails to allege that age was the "but for" cause of Bloomberg's alleged conduct; and (2) the NYCHRL and NYSHRL claims similarly fail to state a *prima facie* case of discrimination or workplace hostility based on age. *See* Bloomberg Opp. at 1. Plaintiff contends that her ADEA claim is timely because she filed her new EEOC charge within 300 days of the last alleged incident of age discrimination, and her claim "relates back" to her initial Complaint. *See* Reply at 3-5. She also argues that the PAC adequately alleges a claim for age discrimination under the ADEA, NYSHRL, and NYCHRL. *See generally id.* The Court considers these arguments for each of

6

Plaintiff's proposed claims in turn.[3]

## I. ADEA Claim

The ADEA provides that, for those over the age of 40, "[i]t shall be unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see id.* § 631(a). To establish a *prima facie* case of age discrimination, Doolittle "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of East Haven*, 952 F.3d 394, 403 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). Over 40 years old at all relevant times, Plaintiff was a member of a protected age group, and there is no dispute that she was qualified for her position. Instead, Defendants dispute the final two elements of Plaintiff's ADEA claim as well as whether the claim is timely brought.

### A. Timeliness

Taking the latter objection first, to bring an ADEA claim, Doolittle must first exhaust her administrative remedies by filing a charge with the EEOC within 300 days of the "alleged unlawful practice." 29 U.S.C. § 626(d)(1)(B); *see In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 82 (2d Cir. 2023); *Duplan v. City of New York*, 888 F.3d 612, 622 n.7 (2d Cir. 2018) (noting that the 300-day limitations period applies to claims of age discrimination that took place in New

---

[3] Defendant Crumpton adds that any age-discrimination claims raised against him are futile because (1) Plaintiff does not allege that Crumpton engaged in any conduct relating to age discrimination, and (2) he cannot be liable for discrimination under the NYSHRL or NYCHRL because he is not Plaintiff's employer, manager, or supervisor. Crumpton Opp. at 1-3. Because the Court denies Plaintiff's motion to amend as to her age-discrimination claims in their entirety, it need not address Crumpton's additional points.

York). "A claim of employment discrimination under the ADEA accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

The Court finds that, other than one allegation, the alleged acts behind Plaintiff's ADEA claim fall outside of the ADEA's statute of limitations. Plaintiff filed her charge of age discrimination with the EEOC on August 10, 2023. *See generally* New Charge. The only alleged discriminatory act that falls within the ADEA's 300-day window – that is, prior to October 14, 2022 – is that Defendants discriminated against Doolittle by failing to award her a real-estate interview assignment in early 2023. Thus, most of her grievances about Defendants' conduct, even if they plausibly alleged age discrimination, are untimely under the ADEA because they accrued more 300 days from the date she filed her charge. *See* 29 U.S.C. § 626(d).

Plaintiff relies on the continuing-violation doctrine to argue that all of the incidents are timely because they relate to the "the last enumerated incident of age discrimination . . . alleged to have occurred in the first few months of 2023." Reply at 3; *see* PAC ¶ 88. The Court finds this argument unpersuasive.

The continuing-violation doctrine does not apply to discrete acts. *See Morgan*, 536 U.S. at 113 (holding in the Title VII context that the continuing-violation doctrine does not apply to discrete discriminatory acts). "Hostile environment claims are different in kind from discrete acts" because the former "involve[] repeated conduct" that "cannot be said to occur on any particular day." *Id.* at 115; *see Zoulas*, 400 F. Supp. 3d at 49-50 (applying *Morgan* to the ADEA context). Plaintiff does not allege a hostile work environment in violation of the ADEA. Where

8

Plaintiff refers to a hostile work environment in her PAC, she does not connect those allegations to her ADEA claim or otherwise argue that Bloomberg's work environment was hostile because of her age. *See generally* PAC. Instead, Plaintiff's earlier ADEA allegations – that Bloomberg pressured Plaintiff to reduce her airtime, reduced her on-air interview segments, and failed to give her a preferred job assignment – consist entirely of discrete acts and therefore the continuing-violation doctrine does not apply. *See, e.g.*, *Morgan*, 536 U.S. at 114 (describing the "failure to promote," among other acts, as discrete); *Hausdorf v. N.Y.C. Dep't of Educ.*, No. 17-cv-02115 (PAE) (SN), 2018 WL 1871945, at *5 (S.D.N.Y. Jan. 25, 2018) (deeming as discrete acts in the ADEA context the "[f]ailure to promote" and "job reassignments"), *report and recommendation adopted*, 2018 WL 895657 (S.D.N.Y. Feb 14, 2018); *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 239 (2d Cir. 2007) (characterizing an "undesirable" assignment and the "discontinuance of a particular job assignment" as discrete acts for ADEA limitations purposes); *Gaffney v. Vill. of Mamaroneck Police Dep't*, No. 15-cv-05290 (CS), 2016 WL 4547499, at *5 (S.D.N.Y. Aug. 31, 2016) (same for "denial of [the plaintiff's] preferred job assignments [and] changes in his duties").

Nor does the relation-back doctrine rescue Doolittle's untimely ADEA claims. Under this doctrine, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)); *see Boonmalert v. City of New York*, 721 F. App'x 29, 31 (2d Cir. 2018) (summary order) (applying the relation-back doctrine in the ADEA context). Such claims represent "a limited, judge-made exception to . . . [the statutory exhaustion] requirement." *Duplan*, 888 F.3d at 624. Unasserted "[s]ubsequent conduct is reasonably related to conduct in an EEOC charge if:

[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (first alteration added) (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)).

None of these exceptions is met here. *See* Reply at 3-5. As to the first category, the focus of the inquiry "should be on the factual allegations made in the [EEOC] charge itself" and whether they "gave that agency adequate notice to investigate" the claims subsequently asserted in federal court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quotation marks and citation omitted). Plaintiff's first EEOC charge asserted only sex-based claims and made no reference whatsoever to age. *See* Original Charge. The relevant conduct alleged in that charge refers specifically to Crumpton's "sexually harassing behavior" and Bloomberg's response to Plaintiff's complaints about that behavior. *Id.* ¶ 57. That conduct is not, as Plaintiff asserts, "intertwined" with her claim that Bloomberg had a practice of marginalizing older women. Reply at 4; *see Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (affirming dismissal of the plaintiff's sexual harassment claim as unrelated to her race- and-color-discrimination claims because she neither "claim[ed] discrimination based on sex" nor "reference[d] [the alleged harasser] or any of his alleged acts of sexual harassment" in her original EEOC charge); *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 204 (S.D.N.Y. 2021) (dismissing an ADEA claim because the plaintiff alleged only race and national-origin discrimination in his EEOC charge and "alleged no facts concerning any discrimination based on his age"); *Collins v. City of New York*, 156 F. Supp. 3d 448, 455 (S.D.N.Y. 2016) (dismissing age-discrimination claim where "*nothing* in [the plaintiff's] charge provided the EEOC with

notice of possible age discrimination"). Second, the PAC does not allege retaliation for filing the Original Charge in October 2021.[4] Third, and finally, Doolittle does not allege new incidents of discrimination that took place after October 2021 that "evince[] the same overall discriminatory purpose" and were "carried out using the same means as the previous misconduct" alleged in her Original Charge regarding sex discrimination. *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, --- F. Supp. 3d ---, 2023 WL 2691622, at *10 (S.D.N.Y. Mar. 29, 2023).

Thus, the only potential age-discrimination claim that is timely is the allegation that Defendants failed to award her a real-estate interview assignment in early 2023.

### B. "But For" Causation

With respect to the timely claim involving the real-estate interview assignment in early 2023 – and even if all of the untimely allegations were considered – the Court finds that Plaintiff does not plead sufficient causation to maintain an ADEA claim. "To prevail on an ADEA age discrimination claim, it is not sufficient for a plaintiff to show 'that age was simply a motivating factor' in the employer's adverse action." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302-03 (2d Cir. 2021) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009)). Instead, "the ADEA's requirement that an employer took adverse action 'because of' age [requires] that age was the 'reason' that the employer decided to act." *Id.* at 303 (quoting *Gross*, 557 U.S. at 176); *see Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (clarifying that the but-for causation standard for federal discrimination claims applies not only at trial but also at the pleading stage). Plaintiff argues that she need not

---

[4] Plaintiff claims only that Bloomberg retaliated in October 2021 "for Plaintiff's complaint," but the context of the PAC confirms that this "complaint" refers to Plaintiff's internal complaints to HR about Crumpton's behavior, not her external EEOC charge. PAC ¶ 73. Indeed, this allegation of retaliation appears in the PAC before any mention of the Original Charge. *See id.* ¶ 82.

11

allege but-for causation at the pleading stage and suggests that she need only give Defendants "fair notice" of her age discrimination claim. Reply at 1 (citation omitted); *see id.* at 3 n.2 (suggesting that Plaintiff need only plead enough facts to support a "minimal inference" of discriminatory intent (citation omitted)). However, Plaintiff relies on cases that predate the Second Circuit's recent distinction between "decisions in the Title VII context applying a more lenient standard at the pleading stage – even assuming that such a standard remains appropriate after *Comcast*" and decisions in the ADEA context. *Lively*, 6 F.4th at 303 n.5; *see id.* ("The antidiscrimination provisions in the ADEA and Title VII are 'materially different,' and our 'interpretation of the ADEA is not governed by Title VII decisions.'" (quoting *Gross*, 557 U.S. at 173, 175)).

Plaintiff does not suggest that Bloomberg took any of the alleged adverse actions because of her age. Plaintiff's claim of Bloomberg's alleged failure to award her a high-profile real-estate interview assignment contains no references to her age, let alone a suggestion that her age was the reason that Bloomberg reduced her responsibilities. *See* PAC ¶ 88. Plaintiff's claim that her on-air time was reduced also lacks this link. *See id.* ¶¶ 62-63, 75, 81. That Plaintiff was "to her knowledge the oldest female television talent" at Bloomberg is not enough to support an inference of age discrimination. *Id.* ¶ 60; *see Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 196 (E.D.N.Y. 2016) (declining to find a minimal inference of age discrimination "merely because [the] plaintiff was the oldest" of principals and assistant principals). Nor are Bloomberg's requests that Plaintiff reduce her airtime sufficient, absent any suggestion that Bloomberg did so because of Plaintiff's age. PAC ¶¶ 57-58; *see Dressler v. City Sch. Dist. of the City of N.Y.*, No. 15-cv-03696 (JPO), 2016 WL 4367967, at *4 (S.D.N.Y. Aug. 15, 2016) (finding no inference of age discrimination where a supervisor's comment allegedly designed to

pressure the plaintiff into retirement constituted nothing more than "an attempt to motivate retirement").

Plaintiff summarily points to a "general campaign by Bloomberg against older women" that included "freezing her at the same level and position as when she started while advancing younger women." Reply at 2 (citing PAC ¶ 87). But "an allegation that [a] plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss." *Nance v. City of New York*, No. 09-cv-02786 (ENV) (VVP), 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011); *see Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 33 (2d Cir. 2016) (summary order) ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."). Indeed, Doolittle does not claim that she was replaced by a younger woman but only that *another* "veteran female television presenter . . . [was] replaced by someone at least fifteen years her junior." PAC ¶ 8. Doolittle does not provide the woman's name, age, or any other information to suggest that Bloomberg marginalized older employees as part of a broader practice. *See Lively*, 6 F.4th at 306 (affirming dismissal of an ADEA claim where the plaintiff alleged that he was a victim of a "campaign to purge [the employer] of elder workers" but did not plead "the executives' ages or the dates and stated reasons for their terminations" and therefore his "vague allegation thus lack[ed] facial plausibility"). Therefore, in addition to the claims being largely untimely, the Court finds that Doolittle has not adequately pleaded that age was the "but-for" cause of Bloomberg's alleged conduct.

## II. NYSHRL and NYCHRL Claims

The Court next turns to Plaintiff's age-discrimination claims under state and city law. The NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee . . . , because of the actual or perceived age . . . of any person . . . [t]o discriminate

13

against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). Claims under the NYCHRL "are governed by a more permissive standard" than ADEA claims. *McLeod v. Gen. Vision Servs., Inc.*, No. 13-cv-06824 (VSB), 2018 WL 3745662, at *7 (S.D.N.Y. Aug. 6, 2018). Plaintiffs need not allege that they suffered an adverse employment action or that "discriminatory animus was the but-for cause or even the primary motivation of their alleged mistreatment." *Delo v. Paul Taylor Dance Found., Inc.*, --- F. Supp. 3d ---, 2023 WL 4883337, at *6 (S.D.N.Y. Aug. 1, 2023). Rather, they must allege only that they have been "treated less well at least in part because of" their age. *Id.* at *6 (quotation marks omitted) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

However, the NYCHRL is not a "general civility code." *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009)). For Doolittle's NYCHRL claim to survive as to her age-discrimination allegations, she must allege "differential treatment that is 'more than trivial, insubstantial, or petty.'" *Torre v. Charter Comm'cns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quoting *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015)). She must also allege that her age "was one of the motivating factors, even if it was not the sole motivating factor, for" her unequal treatment. *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012).

The NYSHRL similarly states that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . , because of an individual's age, . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Previously, "discrimination claims under the NYSHRL and Title VII were generally treated as analytically identical, and addressed together." *Edelman v. NYU Langone*

*Health Sys.*, No. 21-cv-00502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (quotation marks omitted). In 2019, however, the NYSHRL was amended. The amendment did not change the text of the NYSHRL's substantive provisions but rather provided that "[t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. This amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 344 (S.D.N.Y. 2021) (analyzing the plaintiff's NYSHRL claims "under the amended and more lenient NYSHRL standard"); *Charles v. City of New York*, No. 21-cv-05567 (JPC), 2023 WL 2752123, at *6 (S.D.N.Y. Mar. 31, 2023) (considering the plaintiff's NYCHRL and NYSHRL claims together).

Plaintiff has not adequately alleged a *prima facie* case of age discrimination even under the more lenient standards of the NYSHRL and NYCHRL because her allegations lack a plausible inference that her age motivated any of Bloomberg's alleged actions. First, Plaintiff alleges that Bloomberg pressured her to agree to a reassignment. PAC ¶ 57. However, the suggestion that "a significantly younger female employee" would replace Doolittle's television role does not support an inference that age motivated Bloomberg's request. *Id.*; *see Spires v. Metlife Grp., Inc.*, No. 18-cv-04464 (RA), 2019 WL 4464393, at *7 (S.D.N.Y. Sept. 18, 2019) (dismissing the plaintiff's ADEA, NYSHRL, and NYCHRL failure-to-promote claims where the plaintiff alleged only that he was the oldest employee in his department and that the promotion was given to a less qualified, younger employee); *Williams v. Victoria's Secret*, 15-cv-04715 (PGG) (JLC), 2017 WL 1162908, at *8-9 (S.D.N.Y. Mar. 28, 2017) (finding the plaintiff's

15

allegation that he was "eventually replaced by someone under the age of 40" insufficient in the NYCHRL context to raise an inference of a discriminatory motive). Nor is Bloomberg's request that Plaintiff reduce her airtime discriminatory on its own absent any reference in the request to Plaintiff's age. *See* Reply at 9; PAC ¶ 57. Finally, Plaintiff has not plausibly alleged that she was treated less well from this encounter because the suggested reassignment never happened. PAC ¶ 57 (noting that Plaintiff "politely declined the offer"); *see Griffith v. Metro. Transit Auth.-N.Y.C. Transit*, 19-cv-06234 (AT), 2022 WL 845786, at *10 (S.D.N.Y. Mar. 22, 2022) (dismissing the plaintiff's NYCHRL "claim based on the decision to transfer her to [a new location] and change her work responsibilities" because the planned changes "never occurred"), *modified*, 2022 WL 845786, at *5 (S.D.N.Y. Oct. 28, 2022) (declining to exercise supplemental jurisdiction over the plaintiff's failure-to-promote claims under the NYSHRL and the NYCHRL).

Plaintiff's allegation that Bloomberg replaced another colleague with a younger employee – without specifying either person's age – also does not suggest a discriminatory motive. *See Brown v. N.Y.C. Dep't of Educ.*, 2023 WL 173201, at *12 (N.Y. Sup. Ct. Jan. 12, 2023) (dismissing NYSHRL and NYCHRL age discrimination claims for insufficient specificity where the plaintiff did not "allege her age, the age of the other older . . . employees who were allegedly also targeted . . . , or the age of the other, 'significantly younger'" employee who was treated more favorably); *Marcus*, 661 F. App'x at 32-33 (holding, albeit in the NYSHRL context, that the plaintiff had not pleaded even a "minimal inference that age was a motivating factor" where he alleged that the defendant was "terminating older employees and replacing them with younger hires" but provided "only a single name and . . . no dates, ages, or reasons with respect to the termination of other employees"). Plaintiff never alleges that she was replaced by a

younger employee – indeed, she continues to work at Bloomberg – nor does she provide any information suggesting that Bloomberg marginalized older employees as part of a broader practice.

Finally, Plaintiff does not allege facts showing that age motivated Bloomberg's cuts to her on-air time or its failure to award her the real-estate interview assignment and the Court finds nothing to suggest that her age "was one of the motivating factors" behind Bloomberg's conduct. *Melman*, 946 N.Y.S.2d at 40.  Plaintiff also cannot now attribute Bloomberg's alleged reduction of her on-air presence to age discrimination where her earlier complaint alleged that this conduct was retaliation for Plaintiff's complaints of sexual harassment.  PAC ¶¶ 62, 73, 75, 81; *see Renk v. Renk*, 2020 WL 7046642, at *2-3 (N.Y. Sup. Ct. Nov. 25, 2020) (dismissing NYSHRL and NYCHRL age discrimination claims "as pure speculation" at the pleading stage where the plaintiff had alleged that the defendants' conduct was intended "to diminish her stature with clients and business partners," not to discriminate against her because of her age).

For the same reasons, the Court also finds that Plaintiff's age-based hostile-work-environment claims are futile as pleaded.  Under the NYCHRL, the standard for a hostile-work-environment claim is the same as for a discrimination claim.  *See Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) ("[U]nder the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims." (citation omitted)); *Chin v. N.Y.C. Hous. Auth.*, 965 N.Y.S.2d 42, 44 (1st Dep't 2013) (noting that, for a NYCHRL hostile work environment claim, the plaintiff must allege that she was "treated less well than other employees because of her protected status" or that her age "was one of the motivating factors" for the defendants' conduct).  Here, Plaintiff ties her age-based hostile work environment claims under the NYSHRL and NYCHRL to her discrimination claims raised under the same statutes,

staking both sets of claims on the same underlying allegations. *See* Reply at 8-9. Therefore, the Court similarly concludes that Plaintiff does not plead any facts suggesting that age was the "motivating factor behind any workplace hostility." *Boonmalert*, 721 F. App'x at 34; *see id.* (stating that "[d]iscussions of retirement" do not sufficiently allege a hostile work environment under the NYCHRL); *Lettieri v. Anti-Defamation League Found.*, 22-cv-09889 (PAE), 2023 WL 5152447, at *7 (S.D.N.Y. Aug. 10, 2023) (noting that "generalized hostility or generally uncivilized behavior is not actionable" for such claims); *Harris v. NYU Langone Med. Ctr.*, No. 12-cv-00454 (RA) (JLC), 2013 WL 3487032, at *27 (S.D.N.Y. July 9, 2013) ("[T]he broader remediation available under the [NYCHRL] does not allow the Plaintiff to dispense with linking his claim of hostility to some attitude that the law forbids." (original alteration and quotation marks omitted)), *report and recommendation adopted*, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); *Carter v. Verizon*, No. 13-cv-07579 (KPF), 2015 WL 247344, at *6 (Jan. 20, 2015) (dismissing, as conclusory, allegations that do "not connect any action by any supervisor (indeed, any . . . employee) to [the plaintiff's] . . . age").

Plaintiff responds by citing cases in which the court found that the plaintiff had plausibly alleged that he or she had been treated less well under the NYCHRL because of a protected characteristic. *See* Reply at 9. These cases, however, all involved conduct far more specific and explicitly connected to a protected characteristic than Plaintiff's allegations that she remains "the oldest female person on dayside television" amid Bloomberg's replacement of another older colleague and that Bloomberg requested that she reduce her airtime. *Id.* at 8; *cf. Syeed*, 568 F. Supp. 3d at 342 (describing claims that the plaintiff was paid less for similar work than her male comparators, that she was denied certain work resources provided to her male colleagues, and that she was assigned to cover "scraps" while male reporters were consulted on their work

assignments); *Sanderson v. Leg Apparel LLC*, No. 19-cv-08423 (GHW), 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) (finding a supervisor's repeated comments about the plaintiff's perceived sexual orientation, made with "the intent to embarrass [the p]laintiff," sufficient to allege a NYCHRL hostile work environment claim); *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (noting allegations that the plaintiff had to "undergo extra interviews and psychological testing, whereas his female colleagues did not," and that he had heard his supervisors expressed a preference for working with women); *Keles v. Psarelli*, No. 19-cv-03323 (DG) (MMH), 2023 WL 5110157, at *12 (E.D.N.Y. Aug. 9, 2023) (deeming sufficient an adjunct professor's allegations that the defendants offered him only one course to teach and moved him from a private office to a "cafeteria-style setting" while allowing substantially younger adjunct professors to keep their offices).

Therefore, the Court holds that Plaintiff's proposed amendment is futile as to her age-discrimination claims under the NYSHRL and NYCHRL because she has failed to adequately plead causation.

### III. Supplemental Claims for Sex Harassment and Retaliation

The Court, however, grants Plaintiff's motion to amend to add new allegations in support of her existing claims for sex harassment and retaliation. Plaintiff argues that these supplemental allegations specify "additional facts, context, and further details in support of Plaintiff's original causes of action." Br. at 4. Defendants counter that Plaintiff had as many as eight years to raise these allegations, several of which seem intended "to inflict harm, injury, and embarrassment, particularly to defendant Crumpton." Bloomberg Opp. at 4, 6. To the extent that Defendants urge the Court to deny amendment of Plaintiff's sex-based claims on the grounds of undue delay or bad faith, the Court finds evidence of neither. "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."

*Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 294 (S.D.N.Y. 2019) (quoting *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Defendants do not argue that they were otherwise prejudiced by the time that Plaintiff took to allege these supplemental facts. As for whether the supplemental allegations amount to bad faith attacks on Defendant Crumpton, the Court does not find them "unrelated to any conceivable claim of [sex] discrimination." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 415 (S.D.N.Y. 2012), *overruled on other grounds by Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108 (2d Cir. 2018) (en banc).

## CONCLUSION

For the foregoing reason, the Court grants in part and denies in part Doolittle's motion to amend the Complaint. The Court GRANTS Doolittle's motion to amend as to her supplemental allegations in support of her existing sex discrimination and retaliation claims, but DENIES the motion as to new claims of age discrimination. Within fourteen days of this Order, Plaintiff shall file, as a standalone docket entry, a revised Amended Complaint that complies with this Order and Opinion.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 41.

Dated: October 31, 2023
       New York, New York

                                            SO ORDERED.

                                            *Jennifer Rochon*
                                            JENNIFER L. ROCHON
                                            United States District Judge